

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Perry L. Jones
County Attorney
Travis County
Austin, Texas

O-5809

Dear Sir:

Opinion No. O-5809
Re: (1) Construction and applica-
tion of Articles 483, 484, 485,
Penal Code, in regard to unlaw-
fully carrying arms.
(2) Deputy and special deputy
constables, appointment and
legality of, with reference to
right to wear prohibited weap-
ons, and related questions.

We have given consideration to your letter of re-
cent date requesting our opinion relative to several ques-
tions, which we have restated as follows:

1. Article 483, Penal Code of Texas, pre-
scribes a penalty for unlawfully carrying arms.
Article 484 makes certain exceptions and provides,
among other things, that Article 483 shall not
be applicable "to any deputy constable, or spe-
cial policeman who receives a compensation of
forty dollars or more per month for his services
as such officer, and who is appointed in conform-
ity with the statutes authorizing such appoint-
ment". Would a "special constable", or "deputy
constable", who is paid $4.00 per night by an
individual for keeping order in a night club,
and who is paid nothing by the county, be legal-
ly entitled to carry a pistol, as one coming
within the quoted exception?

2. May such "special constable", or "deputy
constable" be lawfully paid by a private indi-
vidual, or must he receive his compensation as
such officer from the county or through fees of
office?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSIST

3. Is it legal for a deputy constable to accept money for keeping order in a night club without turning said money into the County Treasury, even though he gives the said night club more of his time and attention than is required in the course of his duties as deputy constable, and although he is paid nothing by the county?

4. Only one deputy constable in Travis County is receiving a salary from the county for his services as such officer. However, four "special deputy constables" have been appointed and approved by the Commissioners' Court, in accordance with Article 6879a, Vernon's Annotated Civil Statutes, said deputy constables receiving no salary, although they do receive more than forty dollars per month from private individuals to keep order in night clubs. Are these "special deputy constables" legally permitted to carry pistols, under Article 484, supra?

5. Assuming that operators of a drug store, grocery store or other business must take large sums of money to the bank, and as a practical matter, the sheriff's department nor the police department cannot provide an armed escort, may such operators or their employees legally arm themselves with pistols for the purpose of protecting the money while it is so conveyed to the bank?

6. Article 485 of the Penal Code condemns the carrying of arms in certain assemblies. Is a night club where people assemble to drink beer, and sometimes dance, such a place of assembly or amusement as to come under the provisions of such Article?

7. Would the type of officer referred to in question 1, above, come within the provisions of Article 485 if he carried a pistol in a night club such as is described in question 6?

8. Could even the owner of such night club, as described in question 6, legally arm himself or an agent to keep order in such an assembly?

9. Is a hotel lobby a place of assembly as contemplated by Article 485, Penal Code?

10. If the answer to question 9 is in the affirmative, could the hotel management legally arm a hotel detective to keep order in such lobby?

Your first question involves several considerations. In the first place you refer to a "special constable". What is a "special constable"? The statute referred to (Art. 484, Penal Code) specifies a "special policeman" but "deputy constable".

Next, we note the language of the Article under consideration. As codified and now standing upon our statute books as Article 484, Penal Code, the pertinent provisions read as follows:

"The preceding article shall not apply to . . . any peace officer in the actual discharge of his official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to any deputy constable, or special policeman who receives a compensation of forty dollars or more per month for his services as such officer, and who is appointed in conformity with the statutes authorizing such appointment; . . ." (Emphasis ours.)

Prior to the codification of 1925, the above article was known as Article 476 of the Penal Code of 1911; it was amended by the Fourth Called Session of the Thirty-fifth Legislature (Acts 1918, Fourth Called Sess. C. 91, 31; 19 G. L. 194), and as then reenacted read as follows:

"The preceding article shall not apply to . . . any peace officer in the actual discharge of his official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons travelling provided, this exception shall not apply to any deputy constable, or special policeman who does not receive a compensation of forty dollars or more per month for his services as such officer, and who is not appointed in conformity with the statutes of this State authorizing such appointment; . . ." (Emphasis ours.)

Honorable Perry L. Jones, Page 4

As recodified in 1925, and as it stands today, does the statute require a deputy constable, in order to come within the exception, to "receive a compensation of forty dollars or more per month for his services?"

Another incidental question concerns the authority of a private citizen to employ either a "special" or a "deputy constable" to keep order in a night club, and to pay the sum of $4.00 per night (or any sum) for such services.

The only references we find in the statutes to "special constables", as such, are found in Articles 102 and 103 of the Code of Criminal Procedure. They may be appointed by any magistrate, only to "suppress riots, unlawful assemblies and other disturbances at elections"; when duly appointed in accordance with the provisions of the cited articles of the Code, they have all the powers of peace officers generally, for the limited purpose for which they are appointed. Gonzales v. State, 53 Tex. Cr. R. 430, 110 S. W. 740.

We find no allusion in the Codes to the term "special deputy" constable. The Legislature has attempted to authorize "special deputy sheriffs" in certain counties (Art. 3912f-1, |2, Vernon's Annotated Civil Statutes); but we find no legislative effort to create or authorize such special officers to serve with or under constables.

We do know that there is provision for the designation of persons other than regular officers to serve process and warrants of arrest in certain cases of emergency (Arts. 231, 888, C. C. P.); and on at least one occasion the person so named was denominated a "deputy constable" (Stephenson v. State, 93 Tex. Cr. R. 578, 249 S. W. 492). The cited case holds that citizens appointed under these statutes can lawfully carry a pistol while so engaged. However, we do not think these statutes are pertinent to your problem.

Article 484, supra, specifies the exemption from prosecution for unlawfully bearing arms, insofar as the officer here alluded to is concerned, to a "deputy constable". Irrespective of the applicability of the clause, "who is appointed in conformity with the statutes authorizing such appointment", as contained in such statute, we think such would have been contemplated. In other words, where the article uses the term "deputy constable", one who has been duly and legally appointed, qualified and is acting as such, is contemplated, and is intended to have the benefit of the law.

Honorable Ferry L. Jones, Page 5

Although Article 484, Penal Code, 1925, supra, standing alone, may be susceptible of construction as to whether the underscored portion with reference to receiving compensation of forty dollars or more per month is applicable to a deputy constable, we think the legislative history of the act clearly indicates that it is. Note the underscored portion of the amendment of 1918, supra. See Stephenson v. State, 93 Tex. Cr. R. 578, 249 S. W. 492, supra, wherein it is pointed out that the evident purpose of the amendment was to discourage and prevent the useless and promiscuous carrying of arms under the guise of special deputies. Also, Opinion O-6372, Attorney General of Texas, approved January 31, 1945.

We hereby reiterate the language of our said Opinion O-6372:

"The provisions contained in Article 484, Vernon's Annotated Penal Code, regarding compensation of $40.00, or more, per month, is applicable to deputy constables and special policemen. . . ."

In our Opinion No. O-773, to which you referred in your letter submitting the above questions, it is stated:

". . . it is the opinion of this department that a deputy sheriff who preserves the peace at a public celebration and dance would be acting within the scope of his official duties and would not be entitled to receive extra compensation from the county or from third persons, a different, or a greater or less compensation for his official services than that which has been prescribed by law."

In the case of the question as submitted by you, we express our opinion that either a "special" or "deputy" constable, conceding his appointment to be legal, would be charged with the official duty to preserve the peace, if present in a night club, and as such officer, he would not be authorized to receive $4.00 a night, nor any other sum as compensation from an individual "for keeping order in a night club". 34 Tex. Jur. 534, §117, and cases cited. The compensation of public officers must be fixed by the Legislature or by some governing body expressly authorized so to do. First Baptist Church v. City of Fort Worth, (Tex. Comm. App.) 26 S. W. (2d) 196, affirming judgment (Tex. Civ. App.) 17 S. W. (2d) 130.

Honorable Perry L. Jones, Page 6

In view of our expressions above, which we believe are amply supported by the authorities, you are advised that it is our opinion that a "special constable" or "deputy constable" keeping order in a night club under the circumstances recited in your first question, as a matter of law, would not come within the exceptions and exemptions prescribed by Article 484, Penal Code, supra, should he be proceeded against for unlawfully carrying the arms prohibited by Article 483, Penal Code.

Your second question has been partially considered above. For official duties, such officer would not be entitled to receive any compensation other than that which has been provided by law. 34 Tex. Jur. 534, supra. For any other duties, not coming within the scope of a peace officer, of course, the compensation would be a matter of private contract. But when a disturbance of the peace became imminent or actual, if an officer, one is charged immediately with a specific duty to preserve the peace. See Article 37, Code of Criminal Procedure, 1925. While it is true that Article 36, C. C. P., in defining peace officers states that a constable is such and omits any reference to a deputy constable, in Wilson v. State, 117 Tex, Cr. R. 63, 36 S. W. (2d) 733, it is pointed out that Article 36 was enacted long prior to the time that provision was made for the appointment of deputy constables, and the case contains this statement:

"... We think it was the intention of the Legislature in providing for the appointment of deputy constables to impose upon such officers the duties required of peace officers. If such were not the case, the civil statutes to which reference has been made are without efficacy. ..." (Referring to the statutes providing for deputy constables.)

Your third question is also partially covered by the discussion above.

However, merely because one is a deputy constable, he would not be required to give all of his time to the duties of the office which he holds. In our Opinion No. 0-5081 it was held that a constable on a salary basis could draw his salary as constable, although he was also employed by a Railroad as a trainman. It is well known that many peace officers, especially precinct officers, must supplement their official

incomes with earnings derived from non-governmental activities, and so long as they hold themselves available at all times for whatever official duties that might come up, we see no legal obstacles to prevent their doing so, provided such employment does not entail activities inconsistent with their official duties. In case of neglect of official duty, the law provides a remedy. See Title 100, Revised Civil Statutes of Texas, 1925, "Officers--Removal Of", and especially Articles 5970, 5973, et seq.

As your question is stated, we do not believe the deputy constable could legally be paid by private individuals "for keeping order in a night club". If, as already stated above, the deputy constable was present in a night club where a disturbance actually occurred, or was impending, he would have enjoined on him by law a clear and distinct duty to act in his official capacity to preserve the peace. If the county of his appointment, and wherein the night club is situated, pays its precinct officers on a salary basis, such deputy would be bound, in event of arrest and conviction of any offender, to collect the statutory fees for his services, from the defendant, and through his principal, the Constable, to remit said fees to the Officers' Salary Fund of the county. If the county happened to be paying its precinct officers on a fee basis, the principal, Constable, would be entitled to the fees, subject to accounting at the end of the year. In neither event would the operator of the night club be liable for the fee (unless he happened to be the convicted defendant), nor could the officers, or the county, proceed against him to collect it.

If the county pays its precinct officers on a salary basis and the commissioners' court authorizes the appointment and accepts the services of a deputy constable, and fixes no salary for such officer, he is not legally entitled to look to private sources for compensation for performing his official duties. The method of appointment and the compensation, if any, to be paid such officers is fixed in Articles 3902 and 6879a, Vernon's Annotated Civil Statutes of Texas. With reference to such salaries, it is noted that the law provides a maximum or "ceiling" beyond which a county or precinct officer may not go, but does not prescribe a minimum or "floor".

If, for performing an official duty, the deputy constable does collect compensation from a private source,

such as a night club operator, he is doing that which is un-
authorized and illegal, but whatever may be the outcome of
any proceedings brought against him for such conduct, the
county cannot collect the money, and therefore the officer
concerned could not be compelled to "turn said money into
the County Treasury".

With reference to your fourth question, we again
note the expression or term "special deputy constables".
See our discussion hereinabove as to this.

As the question is stated, we express the opinion
that the purported officers in question do not come within
the forty dollar ($40.00) compensation exemption. This for
the reasons, also discussed above, with reference to private
employment to perform official duty.

It will not be incumbent on you, as county attorney,
to negative or otherwise anticipate defenses, but we feel it
proper in this connection to refer you to the line of cases
bearing on the defense that the accused believed or had rea-
son to believe that he was an officer and had the right to
carry a pistol. See, for example, the cases of Lyle v. State,
21 Tex. Cr. R. 153, 17 S. W. 425; Carroll v. State, Tex. Cr.
App., 57 S. W. 94; Blair v. State, 26 Tex. Cr. R. 387, 9 S. W.
890 and Barnett v. State, 89 Tex. Cr. R. 48, 229 S. W. 519.
However, a mistake of law is no defense, and in cases which
we feel more similar to the ones of which you inquire, appli-
cation of the correct principle will be found in Johnson v.
State, 73 Tex. Cr. R. 133, 164 S. W. 833, Patton v. State,
61 Tex. Cr. R. 352, 135 S. W. 556; Ransom v. State, 73 Tex.
Cr. R. 442, 165 S. W. 932 and Gandara v. State, 94 Tex. Cr.
R. 535, 252 S. W. 166.

In view of the last cited cases, we are inclined to
the view that in a case such as you mention, any such defense,
if interposed, would be held inapplicable and inadmissible
as a "mistake of law".

Your fifth question is answered in the negative.
Nothing in the exceptions statute (Art. 484, P. C., supra)
makes such a state of facts a defense.

As to your sixth question, the courts do not seem
to have passed directly upon the question of whether a night

Honorable Perry L. Jones, Page 9

club, as such, comes within the statute. We quote Article 485, Penal Code:

"If any person shall go into any church or any religious assembly, any schoolroom, ballroom, or other place where persons are assembled for amusement or for educational or scientific purposes, or into any circus, show or public exhibition of any kind, or social gathering, or to any election on the day or days of any election where any portion of the people of this State are collected to vote at an election, or to any other place where people may be assembled to muster or perform any other public duties, and shall have or carry about his person any pistol or other firearm, dirk, dagger, slung shot, sword cane, spear, brass knuckle, bowie knife, or any other kind of a knife made and manufactured for the purpose of offense and defense, he shall be fined not less than one hundred nor more than five hundred dollars, or be confined in jail not less than thirty days nor more than twelve months, or both. Acts 1871, p. 25; Acts 1915, p. 132."

It will be noted that the penalty is in substantially the same language and is the same as that provided in the general statute against carrying prohibited arms, Article 483, Penal Code, supra.

The gist of the offense covered in Article 485, supra, is the carrying of a prohibited weapon into an assembly mentioned in the statute and there must be an actual assembly of people at the time the weapon is so carried. Cassels v. State, 108 Tex. Cr. R. 477, 1 S. W. (2d) 644; Rainey v. State, 8 Tex. Cr. R. 62, 34 Ann. Rep. 736; Owens v. State, 3 Tex. Cr. R. 404.

It would seem clear that an assembly such as you mention would come within that part of the statute defining the assemblies covered as a "place where persons are assembled for amusement", or that most certainly such an assemblage would be a "social gathering". If the weapon be carried into the assembly while dancing was going on, we think clearly the statutory word "ballroom" would be applicable.

Honorable Ferry L. Jones, Page 10

In Owens v. State, supra, an indictment charging the offense to have been committed in a ballroom will be understood to mean a place where a social gathering composed of men and women were engaged in dancing and it is not even necessary to allege that dancing was going on, this being a matter of proof. The court further stated that the indictment was good in the charge either that the offense was committed in a "ballroom" or at "a social gathering". We affirm that such a place as you describe in your sixth question would come within either Article 483 or 485 as a place where the unlawful carrying of weapons is prohibited.

Consideration of your seventh question impels notice of the language of Article 486, Penal Code:

"The preceding article (Art. 485, Penal Code) shall not apply to peace officers or other persons authorized or permitted by law to carry arms at the places therein designated."

It will be noted that the exemptions here enumerated are not as numerous as those mentioned in Article 484, supra, in regard to the crime of unlawfully carrying arms generally (Art. 483, supra). However, the limitation does not seem to be so strictly applied to peace officers. Whereas Article 484 provides protection to the peace officers "in the actual discharge of official duties" and does not, within the exception, include deputy constables or special policemen who receive less than forty dollars per month compensation, it has been held under Article 486 that it was not incumbent upon a special policeman to show that he was then and there in the discharge of his duties as such. Williams v. State, 42 Tex. 466.

We believe, however, that Article 486 would have to be read in the light of Articles 483 and 484, and that the Williams case would require reconsideration since the amendment to the law in 1918 incorporated into what is now Article 484 the requirement that a peace officer must be "in the actual discharge of his official duty" at the time of carrying the weapon. In other words, we think the words "authorized or permitted by law to carry arms at the places therein designated" would be construed to refer back to the general exemption statute, Article 484, as the "law" referred to in said Article 486.

Honorable Ferry L. Jones, Page 11

Therefore, you are advised that it is our opinion that "special constables" or "deputy constables" referred to in your first question would not come within the exceptions to Article 485 as specified in Article 486, for the same reasons considered in our answer to your first question.

Your eighth question is answered in the negative by virtue of the expressions of the Court of Criminal Appeals found in Alexander v. State, 27 Tex. Cr. R. 533, 11 S. W. 628; Owens v. State, 3 Tex. Cr. R. 404; Brooks v. State, 15 Tex. Cr. R. 88; Monson v. State, 45 Tex. Cr. R. 426, 76 S. W. 570; Nichols v. State, 45 S. W. 494; Gibbs v. State, 70 Tex. Cr. R. 278, 156 S. W. 687; Cassels v. State, 108 Tex. Cr. R. 477, 1 S. W. (2d) 644. In the last case cited, Judge Hawkins of the present court said:

"The owner or occupant of a house where people are assembled in a social gathering may be guilty of there carrying a pistol under the provisions of Article 485, P. C.; hence under the facts proven the court properly refused appellant's special charge which directed an acquittal if he was in his own home at the time he carried the pistol." (Citing cases.)

With reference to your ninth question, we have carefully considered the proposition of whether a hotel lobby comes within the type of assemblage covered by the statute. We have come to the conclusion that it would not ipso facto be such a place; but naturally conditions could arise to make it so. Certainly a hotel lobby is not a church, schoolroom, ballroom, or circus, show, or public exhibition as meant in the article. We do know that persons could very well assemble there for religious, educational or scientific purposes. Indeed social gatherings are frequently held in hotel lobbies, and it requires no vivid imagination to visualize people assembling there to perform public duties. Such matters would be susceptible to proof; if the State should prove sufficient facts, a hotel lobby would come within the law. Because of the possibilities, we do not attempt to categorically answer your ninth question.

Your tenth and final question is as to the right of a hotel detective to bear the prohibited arms while on duty. As stated, if within the hotel lobby there was a public assemblage under the circumstances discussed in the preceding paragraph  making said place one within Article 485, the hotel

detective would come within the rules laid down by the cases cited in answer to your eighth question, and he would be amenable to prosecution. If the hotel lobby did not, in fact, come within such definition, under the authority and limitations as announced in Robison v. State, 103 Tex. Cr. R. 141, 280 S. W. 776, we are of the opinion that the detective could bear arms. With reference to a night watchman for an oil company, the court said:

> ". . . Appellant was employed by the Big Lake Oil Company as a night watchman. We have no doubt of his right to carry a pistol during the hours and at the place of his said employment. . . ."

> ". . . Appellant testified that it was his business to watch the company's property at night.

> "We are of opinion that appellant's right to carry the pistol only lay within the bounds of his employment and during the hours that he was on duty. During such hours we think he was exempt under the law, but that he had no right to claim said exemption when seen around the town and village of Texon in the daytime. He does not claim that he had any such duties within his employment, or that he was engaged in any official duty at the time he was seen carrying the pistol." (Emphasis ours.)

We trust that the above exposition of the law applicable to prohibited weapons will prove to be of benefit to you, and that it adequately answers all of your questions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall
Benjamin Woodall
Assistant

APPROVED MAR 20 1945

BW:mp



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN